# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TWYLA JEAN FLETCHER, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>Acting Commissioner of the Social )<br>Security Administration, )<br>)<br>Defendant. ) | Case No. CIV-13-423-SPS |

## OPINION AND ORDER

The claimant Twyla Jean Fletcher requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision is REVERSED and the case is REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot,

considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born October 3, 1966, and was forty-five years old at the time of the most recent administrative hearing (Tr. 47, 273). She completed high school and two years of college, and has worked as a commercial cleaner, attendant childcare instructor, and attendant/change person (Tr. 35, 324). The claimant alleges she has been unable to work since May 2, 2009, due to bi-polar disorder; arthritis in her hands, feet, and back; tennis elbows; muscle discomfort; possible fibromyalgia; and COPD (Tr. 319).

**Procedural History**

On May 19, 2009, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her applications were denied. ALJ Michael A. Kirkpatrick conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated May 16, 2011 (Tr. 126-140); however, the Appeals Council reversed and remanded the case back to the ALJ with instructions to update the treatment evidence on the claimant's medical condition, evaluate the severity of all the medically determinable mental impairments, evaluate the medical source opinions, consider the claimant's RFC on the updated record and whether she can perform her past relevant work, and secure supplemental evidence from a vocational expert (Tr. 146-147). On remand, ALJ Trace Baldwin conducted a supplemental administrative hearing and again determined that the

claimant was not disabled in a written opinion dated May 18, 2012 (Tr. 21-37). The Appeals Council denied review, so ALJ Baldwin's decision represents the Commissioner's final decision for purposes of this appeal. See 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform a narrowed range of sedentary work, 20 C.F.R. §§ 404.1567(a) and 416.967(a), *i. e.*, she could lift/carry ten pounds occasionally and less than ten pounds frequently, stand/walk two hours in an eight-hour workday, and sit six hours in an eight-hour workday, but she must have a sit/stand at will option (Tr. 27). Additionally, the ALJ found that the claimant could only occasionally push/pull, including the operation of hand/food controls; occasionally climb ramps and stairs but never climb ladders, ropes, or scaffolding; frequently balance and stoop; and occasionally crouch, but never crawl (Tr. 27). He imposed no manipulative, communicative, visual, or environmental limitations, but stated that, due to psychologically-based factors, she could perform simple and some complex tasks, relate to supervisors and co-workers on a superficial basis, work with the general public on an incidental superficial basis, and adapt to a work situation appropriately (Tr. 28). The ALJ concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work that she could perform in the regional and national economies, *i. e.*, assembler/final assembler, hand worker, or production inspector (Tr. 36).

## Review

The claimant contends that the ALJ erred: (i) by improperly picking and choosing evidence not contained in the record but discussed in a prior disability determination that was not appealed, and (ii) by improperly determining that she had the RFC to perform unskilled sedentary work. In support of her second contention, she argues that the ALJ failed to properly inquire as to the parameters of the sit/stand option and further failed to properly evaluate the medical evidence related to her mental impairments. The Court finds that the ALJ *did* fail to properly evaluate the evidence related to the claimant's mental impairments, and the decision of the Commissioner should therefore be reversed.

The claimant has the severe impairments of fibromyalgia, bipolar disorder, and generalized anxiety disorder (Tr. 24). As to her mental impairments, the claimant received treatment at the Rubin White Clinic associated with the Choctaw Nation Hospital. The chief complaint/presenting problem for each record was suppressed for confidentiality, but the claimant received treatment from April 2009 (one month prior to the alleged onset date) through July 2012. Records indicate she was treated by both counselors and physicians, and she was given a range of diagnoses including bipolar II disorder; panic disorder without agoraphobia; depressive disorder NOS; major depressive disorder, recurrent, moderate; anxiety disorder; and agoraphobia with panic disorder (Tr. 548-565, 607-655).

Dr. Kathleen Ward conducted a mental status examination on July 16, 2009 (Tr. 428). She noted that the claimant did not appear to be a malingerer and had a hyper mood, but there were no perceptual abnormalities noted and she was oriented (Tr. 430).

Dr. Ward noted the claimant had some deficits in social judgment and problem solving, and assessed her with bipolar I and generalized anxiety disorder (Tr. 430). She did not believe the claimant was capable of managing benefit payments in her own interest (Tr. 432).

On August 20, 2009, Carolyn Goodrich, Ph.D., found the claimant had mild restrictions of activities of daily living, and moderate restrictions in difficulties in maintaining social functioning, and maintaining concentration, persistence, or pace, but no episodes of decompensation (Tr. 451). She summarized Dr. Ward's assessment without analysis (Tr. 453). She then completed a Mental RFC assessment, finding the claimant was moderately limited in the ability to understand and remember detailed instructions, carry out detailed instructions, and interact appropriately with the general public (Tr. 456). She stated that the claimant could perform simple and some complex tasks, relate to others on a superficial work basis, and adapt to a work situation (Tr. 457).

Evidence submitted to the Appeals Council from the Rubin White Clinic revealed more information regarding the claimant's condition and treatment. (Tr. 642-655). Treatment notes beginning in November 2011 reflect that they were working to help her reduce her anxiety and be able to go out in public more. A goal for going out in public was to increase going out in public by 20% and maintaining her stance without retreat (Tr. 653). They continued to work on this and the counselor noted that the claimant had "anticipation anxiety about everything outside of her home environment" (Tr. 650). The following month her counselor noted that she needed to be seen more frequently for success, noting a lack of progress (Tr. 649). But the following month the claimant

indicated she could not afford the gas for treatment even once a month, although she did report a 5% improvement in the ability to go into public places (Tr. 646). The claimant missed treatment for three months due to inability to afford the gas to get there, but upon her return she agreed she needed more frequent treatment. The counselor recommended every two weeks and she chose every three weeks (Tr. 644-645).

In his written opinion, the ALJ noted the claimant's mental health treatment and that the presenting problems had been suppressed due to confidentiality, and also noted the varying diagnosis of her mental impairments (Tr. 30). He stated that the record contained "no reports of psychological complaints or abnormal mental findings on examination" (Tr. 30). He summarized Dr. Ward's examination, and challenged the claimant's ability to afford treatment because she had resources available for living expenses (provided by her husband) and a gambling addiction (Tr. 30-31).

Although the ALJ found the claimant had several severe mental impairments, he actually devoted a great deal of time at step four to discrediting those related complaints, without explaining how these severe impairments would affect her ability to work. An explanation should be provided when, as here, an impairment found to be severe at step two is determined to be insignificant in later stages of the sequential evaluation. *See Timmons v. Barnhart*, 118 Fed. Appx. 349, 353 (10th Cir. 2004) (finding the ALJ should have "explained how a 'severe' impairment at step two became 'insignificant' at step five.") [unpublished opinion]; *see also Hamby v. Astrue*, 260 Fed. Appx. 108, 112 (10th Cir. 2008) ("In deciding Ms. Hamby's case, the ALJ concluded that she had many severe impairments at step two. He failed to consider the consequences of these impairments,

however, in determining that Ms. Hamby had the RFC to perform a wide range of sedentary work.") [unpublished opinion]. Additionally, the ALJ failed to properly assess the combined effect of all the claimant's impairments – both severe and nonsevere – in assessing her RFC. *See Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original]; *McFerran v. Astrue*, 437 Fed. Appx. 634, 638 (10th Cir. 2011) (unpublished opinion) ("[T]he ALJ made no findings on what, if any, work-related limitations resulted from Mr. McFerran's nonsevere mood disorder and chronic pain. He did not include any such limitations in either his RFC determination or his hypothetical question. Nor did he explain why he excluded them. In sum, we cannot conclude that the Commissioner applied the correct legal standards[.]").

The claimant's contention that the ALJ failed to properly evaluate all the medical evidence is bolstered by evidence submitted to the Appeals Council after the hearing, which included the additional treatment records from Rubin White revealing that the claimant's anxiety disorder was manifested by features of agoraphobia. The Appeals Council was required to consider this evidence if it is: (i) new; (ii) material; and, (iii) "related to the period on or before the date of the ALJ's decision." *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004), *quoting Box v. Shalala*, 52 F.3d 168, 171 (8th Cir. 1995). The parties do not address whether the evidence submitted by the claimant after the hearing qualifies as new, material, and chronologically relevant, but the

Appeals Council *did* consider it (Tr. 7), and the Court therefore has no difficulty concluding that it does qualify.

Evidence is new if it "is not duplicative or cumulative." *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003), *quoting Wilkins v. Sec'y, Dep't of Health & Human Svcs.*, 953 F.2d 93, 96 (4th Cir. 1991). These records were not made available to the ALJ prior to his decision, and in fact provide more detail regarding her mental health treatment than was previously a part of the record; thus it was neither duplicative nor cumulative. Second, evidence is material "if there is a reasonable possibility that [it] would have changed the outcome." *Threet*, 353 F.3d at 1191, *quoting Wilkins*, 953 F.2d at 96. The evidence must "reasonably [call] into question the disposition of the case." *Id. See also Lawson v. Chater*, 1996 WL 195124, at *2 (10th Cir. April 23, 1996). In discounting the claimant's mental impairments, the ALJ stated that there were no psychological complaints or abnormal mental findings. But the records from Rubin White indicated that the claimant's mental impairments significantly affected her ability to function and even leave her home. This evidence therefore suggests the claimant has impairments discounted or completely unaccounted for in her RFC, and it is therefore clearly material.

Finally, the evidence is chronologically relevant because it pertains to the time "period on or before the date of the ALJ's Decision." *Kesner v. Barnhart*, 470 F. Supp. 2d 1315, 1320 (D. Utah 2006), *citing* 20 C.F.R. § 404.970(b). The evidence presented by the claimant after the administrative hearing thus *does* qualify as new and material evidence under C.F.R. §§ 404.970(b) and 416.1470(b), and the Appeals Council

considered it, so the newly-submitted evidence "becomes part of the record . . . in evaluating the Commissioner's denial of benefits under the substantial-evidence standard." *Chambers*, 389 F.3d at 1142, *citing O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994). In light of this new evidence, the Court finds that the decision of the Commissioner is not supported by substantial evidence because the ALJ had no opportunity to perform a proper analysis of the newly-submitted evidence in accordance with the authorities cited above, and the Commissioner's decision must therefore be reversed and the case remanded for further proceedings. On remand, the ALJ should re-assess the claimant's RFC in light of the new evidence,[2] and then re-determine the work she can perform, if any, and ultimately whether she is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner decision is accordingly hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 17th day of March, 2015.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**

---

[2] On remand, the ALJ should also take care that medical evidence referred to in the decision is actually contained in the record and does not reflect improper picking and choosing. *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence.").